IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| HERMITAGE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 2:09cv398-MHT (WO) |
| GRAHAM CHAMPION, LINDA CHAMPION, and GALLOPS HOME BUILDERS, LLC, | ) ) ) ) | |
| Defendants. | ) | |

OPINION

In this federal lawsuit brought under the Declaratory

Judgment Act of 1984, 28 U.S.C. § 2201(a), plaintiff

Hermitage Insurance Company seeks a declaratory judgment

finding that it had no duty to defend or indemnify

defendant Gallops Home Builders, L.L.C. in a state-court

lawsuit brought against Gallops by defendants Graham and

Linda Champion.  Gallops has responded to this federal

lawsuit with breach-of-contract, bad-faith-refusal-to-

pay, and bad-faith-refusal-to-investigate counterclaims

against Hermitage, with the Champions siding with Gallops on its counterclaims.  Jurisdiction is proper under 28 U.S.C. § 1332 (diversity).

This matter is now before the court on Hermitage's motion for summary judgment on both its request for a declaration and Gallops's counterclaims.  For the reasons that follow, Hermitage's motion will be granted.


I.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In deciding whether summary judgment should be granted, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec.</u>

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


## II.

In August 2002, Gallops agreed to build the Champions a new home, which the family then moved into in April 2003.  The work was completed entirely by subcontractors paid by Gallops.  A few months later, the Champions noticed cracks in the floors, walls, and ceiling.  After an inspection, Gallops determined that an increase in the moisture content of the soil beneath the home was causing it to move and the cracks to develop.  The company installed crack-monitoring devices throughout the residence in October 2004.

Gallops informed the Champions that it would make all necessary repairs, but only when the monitoring devices indicated that the house was no longer moving.  However, since the devices were installed in 2004, Gallops has not completed any repairs to the Champions' home.  The

3

foundation, walls, ceiling, porch, and other parts of the house are cracked, damaged, and unstable.  Structural-engineer consultants, hired by the Champions and Gallops, confirmed that this damage was caused by moisture in the soil beneath the home as well as effervescence and unsatisfactory bracing of the roof-framing system.

The Champions filed suit against Gallops in an Alabama state court in September 2008, charging Gallops with various state-law claims arising from the damage to the home and the company's failure to fix the problems. Gallops asked Hermitage to defend and indemnify it under a commercial general-liability policy it had with Hermitage from September 2002 through September 2004. Subject to certain exceptions and conditions, the policy provides duty-to-defend and indemnification coverage for "'bodily injury' or 'property damage' ... caused by an 'occurrence.'"  Pl.'s Ex. A at 7.

Under the policy, "bodily injury" means "bodily injury, sickness or disease sustained by a person,

4

including death resulting from any of these at any time"
while "property damage" is "Physical injury to tangible
property, including all resulting loss of use of that
property" as well as "Loss of use of tangible property
that is not physically injured."  Id. at 19, 21.  An
"occurrence" is defined as "an accident, including
continuous or repeated exposure to substantially the same
general harmful conditions."  Id. at 20.

Hermitage denied coverage to Gallops and refused to
defend it against the Champions' state-court lawsuit.
Hermitage explained to Gallops that the injuries alleged
in the suit were not caused by an "occurrence" and that
policy exceptions prohibited coverage.  The insurance
policy explicitly did not apply to "'bodily injury' or
'property damage' included within the 'Completed
Operations Hazard' or the 'Products Hazard' when caused
by[,] resulting from[,] contributed to[,] or aggravated
by subsidence of land," Pl.'s Ex. A at 28; nor did it
apply to "contractual liability" or "damage to work

performed by subcontractors on [Gallops's] behalf." <u>Id</u>. at 8, 44.  Subsidence of land "mean[s] earth movement including but not limited to landslide[,] mudflow[,] earth sinking[,] and earth rising or shifting." <u>Id</u>. at 28.  "Products-completed operations hazard" is defined as "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.' ... Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." <u>Id</u>. at 21.

Finally, the policy excluded coverage for damage to "'your work' arising out of it or any part of it." <u>Id</u>. at 11.  "'Your work'[] means: Work or operations performed by you or on your behalf; and Materials, parts or equipment furnished in connection with such work or operations." <u>Id</u>. at 22.  "Your work" also includes "Warranties or representations made at any time with

6

respect to the fitness, quality, durability, performance or use of 'your work.'" Id.

After Hermitage denied the claim, Gallops chose not to answer the complaint and submitted a notice of dissolution. The state court then entered a default judgment for $ 450,000 in favor of the Champions and against Gallops.

Seeking to clarify the scope of the insurance policy's coverage, Hermitage filed the current federal declaratory-judgment lawsuit. Gallops responded with counterclaims alleging breach of contract, bad faith refusal to pay, and bad faith refusal to investigate, with the Champions siding with Gallops on the counterclaims.


## III.

As stated, this court is faced with Hermitage's request for a declaratory judgment and Gallops's counterclaims for breach of contract, bad-faith refusal

to pay, and bad-faith refusal to investigate.  The court will first address Gallops's counterclaims and then address Hermitage's request for a declaratory judgment.

### A. COUNTERCLAIMS

### 1. Breach of Contract

Gallops asserts that Hermitage breached obligations and promises it made in its insurance policy.  An insurer's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured.  <u>Thorn v. American States Ins. Co.</u>, 266 F. Supp. 2d 1346, 1349 (M.D. Ala. 2002) (Thompson, J.), <u>aff'd</u>, 66 Fed. Appx. 846 (11th Cir. 2003) (unpublished); <u>see</u> <u>also</u> <u>Alfa Mutual Ins. Co. v. Morrison</u>, 613 So. 2d 381, 382 (Ala. 1993). Its duty to defend is, therefore, broader than its duty to indemnify.  <u>Universal Underwriters Ins. Co. v. Youngblood</u>, 549 So. 2d 76, 78 (Ala. 1989).  If the Champions' allegations show an "occurrence" which comes

within the coverage of the policy, "[Hermitage is] obligated to defend regardless of the ultimate liability of [Gallops]." Chandler v. Alabama Mun. Ins. Co., 585 So. 2d 1365, 1367 (Ala. 1991) (internal citations omitted).

Under Alabama law, Gallops bears the burden of establishing coverage by demonstrating that the Champions' claims against it fall within the policy, see Colonial Life & Accident Ins. Co. v. Collins, 194 So. 2d 532, 535 (1967), while Hermitage bears the burden of proving the applicability of any policy exclusion, see U.S. Fidelity & Guar. Co. v. Armstrong, 479 So. 2d 1164, 1168 (Ala. 1985). An ambiguous insurance policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. Altiere v. Blue Cross and Blue Shield of Alabama, 551 So. 2d 290, 292 (Ala. 1989). If the policy is not ambiguous however, the insurance contract must be

9

enforced as written, and courts should not defeat express provisions in a policy.  Id.

The Champions alleged the following claims in the underlying state-court action against Gallops: breach of contract, negligence, breach of warranty of habitability, breach of warranty, and fraud.  The court first addresses Hermitage's duty to defend Gallops against each of these claims, and then turns its attention to whether Hermitage must indemnify Gallops.

Breach of contract: The Champions contended that Gallops breached its contract with them by failing to provide a habitable and well-built home free of defects. An examination of the language of the insurance policy confirms that Hermitage was under no obligation to defend Gallops against this charge as it expressly excludes breach-of-contract claims from coverage.  As stated, the insurance coverage "does not apply to ... 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability

10

in a contract or agreement." Pl.'s Ex. A at 8.  Thus, Hermitage had no duty to defend Gallops as to the Champions' breach-of-contract claim.

Negligence: The second count of the Champions' state-court complaint alleged that Gallops "negligently constructed [the Champions'] home and/or negligently managed and supervised the construction of [the] home." Pl.'s Ex. B at 5.  Based upon the clear language of the insurance policy, Hermitage was not required to defend Gallops against this claim.  The evidence shows that the damage to the house was caused by shifting in the soil beneath the house, effervescence, and unsatisfactory bracing of the roof framing system; it is also undisputed that subcontractors performed the actual construction of the home.  The insurance policy did not apply to "damage to your work," meaning that the insurance did not cover damages to work or operations performed by Gallops or to the materials, parts, or equipment it furnished in connection with building the Champions' home.  Pl.'s Ex.

A at 11, 22. Nor did it apply to damage caused by "subsidence of land," id. at 28, or "damage to work performed by subcontractors," id. at 44. Because the plain language of the policy shows that the damage caused by both Gallops's work and "subsidence of land" was not covered, Hermitage had no duty to defend Gallops against this claim.

Breach of warranty of habitability and breach of warranty: The third and fourth counts of the Champions' state-court complaint are similar. The Champions alleged that Gallops sold them a house in a defective condition without informing them of that condition and that Gallops warranted that the home it constructed would be built in a good and workmanlike manner and free of defects. Furthermore, the Champions alleged that Gallops warranted that any defects or damages to the home would be repaired.

Much like with the Champions' negligence claim, the 'damage to your work' exclusion bars coverage for both of these allegations. The Hermitage policy does not apply

to "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" Id. at 22.  Moreover, to the extent that Gallops relies on any promises made in contract, the exception for assumed contractual liability discussed above applies as well.  Therefore, Hermitage had no duty to defend Gallops against these two charges in the Champions' state-court complaint.

Fraud:  In the final count of the state-court complaint, Gallops was charged with fraudulently misrepresenting that it would repair the home.  The Champions asserted that Gallops "represented to Plaintiffs that it was necessary to monitor the movement of the home and delay making any repairs until such time as [Gallops] determined that the house and porch had stopped moving" and that Gallops "further represented that it would make the necessary repairs once the house stopped moving." Pl.'s Ex. B at 7-8.  The Champions alleged that Gallops's representations "were false and were made intentionally,

13

recklessly without knowledge or negligently by mistake."
Id. at 8.  At its heart, this claim alleged that Gallops
breached its contract with the Champions and
misrepresented its ability to complete the contract (that
is, to provide the Champions with a well-constructed
home).

As the policy covered only "bodily injury" or
"property damage" caused by an "occurrence," id. at 7,
Gallops is required to show how its alleged fraud, either
intentional or negligent, was "an accident, including
continuous or repeated exposure to substantially the same
general harmful condition," id. at 14, in order to prevail
on this counterclaim.  In Thorn v. American States Ins.
Co., 266 F. Supp. 2d 1346 (M.D. Ala. 2002) (Thompson, J.),
aff'd, 66 Fed. Appx. 846 (11th Cir. 2003) (unpublished),
this court discussed whether fraud, either intentional or
negligent, is an "occurrence" under a general liability
insurance policy.  There, the fraud counts essentially
asserted claims arising out of a business dispute, albeit

in the context of a consumer transaction. The court
stated that extending coverage to fraud claims would be
improper because "the policy ... was clearly designed to
protect the plaintiffs from liability for essentially
accidental injury to another person, or property damage
to another's possessions." Id. at 1352. The court
explained that, "To allow coverage here would have the
effect of transforming [the insurance company] into 'a
sort of silent business partner' to the consumer
transactions between the[] plaintiff and [the defendant]."
Id. at 1352 (quotation and citation omitted), and "[t]his
would cause an 'enormous' expansion of the scope of the
insurer's liability without corresponding compensation,"
id.; cf. Auto-Owners Ins. Co. v. Toole, 947 F. Supp. 1557,
1564 (M.D. Ala. 1996) (Thompson, C.J.) ("this court would
distort the purpose of the liability insurance policies
in this case by applying them to the consumer
transactions").

15

Just as in <u>Thorn</u>, the Champions' state-court fraud count against Gallops essentially asserted a claim arising out of a business dispute, albeit in the context of a consumer transaction.  Because the Hermitage policy "was clearly designed to protect [Gallops] from liability for essentially accidental injury to another person, or property damage to another's possessions," <u>Thorn</u>, 266 F. Supp. 2d at 1352, the policy "would be stretched beyond its reasonable interpretation," <u>id</u>., if the alleged fraud were found to be an "occurrence."

Gallops argues that alleged fraud is nonetheless an "occurrence" because "none of the exclusions apply," Def.'s Resp. Mot. Summ. J. at 11, and because "bodily injury was included in the complaint," <u>id</u>. at 13. However, Gallops's argument does not touch on the definition of "occurrence" found in the policy.

Because Gallops does not meet its burden of demonstrating how the alleged fraud is an "an accident, including continuous or repeated exposure to substantially

the same general harmful condition," Pl.'s Ex. A at 14,
there is no coverage for this claim.  Therefore, Hermitage
was not responsible to defend Gallops for the Champions'
fraud claim.

Duty to indemnify: Because Hermitage was under no
duty to defend Gallops against the Champions' state-court
complaint, Hermitage was also under no obligation to
indemnify Gallops for the default judgment against it.
See Underwriters Ins. Co., 549 So. 2d at 78.

Summary judgment will therefore be granted in favor
of Hermitage on Gallops's breach-of-contract counterclaim.

## 2. Bad Faith Refusal to Pay

Gallops contends that Hermitage acted in bad faith by
failing and refusing to pay the default judgment.  The
Alabama Supreme Court has held that the elements of a
bad-faith-refusal-to-pay-an-insurance claim include (1)
an insurance contract between the parties and a breach
thereof by the defendant; (2) an intentional refusal to

17

pay the insured's claim or defend the insured; (3) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and (5), if the intentional failure to determine the existence of a lawful basis is relied upon, evidence of the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.  State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293, 304 (Ala. 1999).  Gallops "must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute.  Or, stated differently, [Gallops] must show that the insurance company had no legal or factual defense to the insurance claim." Id.; see also Thorn, 266 F. Supp. 2d at 1353-54.  Most importantly, "if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action

18

based upon the tort of bad faith," <u>Slade</u>, 747 So. 2d at 304.

Hermitage had a lawful basis for denying Gallops's claim: the plain text of the policy showed that it owed no duty to defend and indemnify Gallops against the Champions' state-court suit.  Therefore, summary judgment will be granted in favor of Hermitage on Gallops's bad-faith-refusal-to-pay counterclaim.

### 3. Bad Faith Refusal to Investigate

An insurer may be liable for the tort of bad faith when it fails to investigate properly the insured's claim. <u>Thomas v. Principal Fin. Group</u>, 566 So. 2d 735, 741 (Ala. 1990).  Gallops asserts that Hermitage committed bad faith in failing and refusing to investigate.  "An insurance company has a 'responsibility to marshal all ... facts necessary to make a determination as to coverage before its refusal to pay." <u>Jones v. Alfa Mut. Ins. Co.</u>, 1 So. 3d 23, 36 (Ala. 2008) (citation omitted).  In order

19

to prove a bad-fath-failure-to-investigate claim, Gallops
"must show (1) that the insurer failed to investigate
properly the claim or to subject the results of the
investigation to a cognitive evaluation and review and (2)
that the insurer breached the contract for insurance
coverage with the insured when it refused to pay the
insured's claim." <u>State Farm Fire & Cas. Co. v. Slade</u>,
747 So. 2d 293, 318 (Ala. 1999).

In <u>Slade</u>, the Alabama Supreme Court explained that
"in order to prove a bad-faith-failure-to-investigate
claim, the insured must prove that a proper investigation
would have revealed that the insured's loss was covered
under the terms of the contract." <u>Id</u>. Gallops does not,
and cannot, make this showing.  Gallops argues that
Hermitage failed to "have an independent engineer evaluate
the situation or to even ask Gallops if they had an
engineer's report analyzing the Champions' home." Def.'s
Resp. Mot. Summ. J. at 25.  In the same vein, Gallops
argues that, although Hermitage read its notice of claim,

a letter from the Champions explaining the damage, and the Champions' engineer's report, Hermitage failed to investigate. Gallops insists that an independent engineering report, presumably paid for by Hermitage, was necessary in order for Hermitage to have satisfied its duty to investigate. The law does not confirm Gallops's assessment.

It is undisputed that, after Hermitage received notice of the damage to the Champions' house, a claims manager reviewed information submitted by the Champions and a structural engineer's report. Hermitage then contacted Gallops's attorney and asked if there was any other information that Gallops wanted to provide the insurance company. Hermitage also reviewed the state-court complaint and discussed the allegations with Gallops's attorneys. Hermitage then informed Gallops that there was no coverage available under the policy for the allegations contained in the Champions' complaint.

Based upon the evidence before the court, Gallops's has not demonstrated that a more thorough "investigation would have revealed that the insured's loss was covered under the terms of the contract." <u>Slade</u>, 747 So. 2d at 318. Hermitage reviewed the structural engineer's report, which contained notes from other engineers who had previously investigated the damage. Gallops cites to no case law that holds Hermitage is required to retrace an already thorough and professional investigation, especially as Gallops provided it with no reason to doubt the veracity of the information submitted. As Hermitage "marshal[ed] all ... facts necessary to make a determination as to coverage before its refusal to pay," <u>Jones</u>, 1 So. 3d at 36, summary judgment will be granted in favor of the insurance company on Gallops's bad-faith-refusal-to-investigate counterclaim.

## B.   DECLARATORY JUDGMENT

The court has already found that, as a matter of law, Gallops is not entitled to recover on any of its counterclaims against Hermitage based on the insurance policy.  For the same reasons, Hermitage is entitled to summary judgment on its declaratory-judgment claim and thus to a finding that it was not obligated to defend and indemnify Gallops under the policy.


\* \* \*


For the foregoing reasons, summary judgment will be granted in favor of Hermitage and against Gallops on Gallops's counterclaims and on Hermitage's declaratory-judgment claim.  Because the Champions sided with Gallops on all issues, summary judgment will be entered against them as well.

An appropriate judgment will be entered.

DONE, this the 27th day of April, 2010.


    /s/ Myron H. Thompson    
UNITED STATES DISTRICT JUDGE